1

2

3

4

5

6                                  UNITED STATES DISTRICT COURT

7

8                                  NORTHERN DISTRICT OF CALIFORNIA

9

10    GEORGE UBERTI,

11                    Plaintiff,                          No.  21-cv-00610-WHA

12             v.

13    SUSAN GORIN, DAVID RABBITT,                         **ORDER DISMISSING CASE; ORDER**
      SHIRLEE ZANE, JAMES GORE, LYNDA                     **TO SHOW CAUSE WHY GEORGE**
14    HOPKINS, ERICK ROESER,                              **UBERTI SHOULD NOT BE DEEMED**
                                                          **A VEXATIOUS LITIGANT SUBJECT**
15                    Defendants.                         **TO PREFILING ORDER**

16    ────────────────────────────────

17

18            In November 2005, the Sonoma County Board of Supervisors consolidated the County

19    Auditor-Controller with the County Treasurer-Tax Collector into the Auditor-Controller-

20    Treasurer-Tax Collector (ACTTC) by passing Ordinance No. 5604.  California law,

21    specifically, California Government Code Section 24304.2, expressly authorized the

22    consolidation:

23                       [n]otwithstanding Section 24300, in the Counties of Lake,
                         Mendocino, Santa Cruz, Sonoma, Trinity, and Tulare, the board of
24                       supervisors, by ordinance, may consolidate the duties of the offices
                         of Auditor-Controller and Treasurer-Tax Collector into the elected
25                       office of Auditor-Controller-Treasurer-Tax Collector.

26            In February 2019, George Uberti, proceeding *pro se*, sued the Sonoma County Board of

27    Supervisors and the ACTTC in Sonoma County Superior Court.  He alleged that the County's

28    consolidation of the Auditor-Controller with the Treasurer-Tax Collector violated section two

United States District Court
Northern District of California

of the Sherman Act, 15 U.S.C. § 2; 18 U.S.C. § 643 (public money embezzlement); Section 1099 of California's Government Code (prohibitions against incompatible offices); and Section 424 of California's Penal Code (criminal negligence).  *See Uberti v. Sonoma Cnty. Bd. of Sups.*, No. 19-02338-WHA, ECF No. 1-2 (N.D. Cal. June 10, 2019).  After the supervisors demurred to the complaint in state court, Uberti removed the action here.  A June 2019 order remanded the case to the superior court.  *Ibid.*

In July 2019, Uberti filed an original complaint here (not the instant complaint).  It advanced the same antitrust theory against the same defendants based on the same facts.  Compl., *Uberti v. Sonoma Cnty. Bd. of Sups. et al.*, 19-04025-WHA (N.D. Cal. July 12, 2019).  Uberti asserted (1) consolidation of the Auditor-Controller with the Treasurer-Tax Collector was a "combination in restraint of commerce," and (2) the consolidation caused the County to fail to properly audit and report its expenditure of federal welfare program grants, in turn harming Uberti's social and economic well-being as an intended beneficiary of those programs.

A February 2020 order dismissed that complaint with prejudice.  The order explained, *first*, that Uberti lacked standing to challenge the County's creation of the ACTTC office because he suffered no injury as a result of the County's action.  Uberti asserted that the consolidation and improper auditing negatively affected his social and economic wellbeing as a former homeless person and renter in Sonoma County.  The order found that Uberti had not pled a concrete or particularized injury.  He thus lacked standing to challenge the creation of the ACTTC office.  *Second*, even assuming the County's consolidation of the auditor office into the ACTTC office harmed Uberti, that action was not a violation of the Sherman Act because it was an act of normal government operation.  An act of normal government operation cannot violate the Sherman Act.  Final judgment was entered in favor of defendants.

In July 2020, our court of appeals summarily affirmed stating, "A review of the record and the opening brief indicates that the questions raised in this appeal are so insubstantial as not to require further argument."  *Uberti v. Valerie Brown et. al.*, No. 20-15360, Order (9th Cir. 2020).  It then denied Uberti's motion for reconsideration, as well.

United States District Court
Northern District of California

1   In January, Uberti filed a "motion for a new trial" in No. 19-04025, asserting that the

2   County's creation of the consolidated ACTTC office and its improper auditing harmed him via

3   "market damages in EBT [electronic benefits transfer] benefits" in violation of the Sherman

4   Act.  Mot. for New Trial at 10, *Uberti v. Sonoma Cnty. Bd. of Sups. et al.*, No. 19-04025-

5   WHA.  As noted, the February 2020 order had dismissed the complaint in part because Uberti

6   had not alleged a particularized injury from the consolidation.  Uberti apparently made the new

7   allegation of "market damages in EBT benefits" to remedy his earlier failure to state an injury.

8       The day after filing his motion for a new trial in case number 19-04025, Uberti filed a

9   new complaint initiating this case (No. 21-00610).  The instant complaint centers on the same

10  facts, the creation of the consolidated ACTTC office, and names the same defendants as did

11  the complaints in the two previous cases (19-cv-02338 and 19-cv-04025).

12      A March order denied Uberti's motion for a new trail in No. 19-04025.  Assuming

13  Uberti's new allegation showed he was injured, the order explained again that the

14  consolidation of the Sonoma County Auditor-Controller with the County Treasurer-Tax

15  Collector was an ordinary government operation immune from the Sherman Act.  Moreover,

16  under FRCP 60(a), the grounds for relief from a final judgment are limited:  mistake,

17  inadvertence, surprise, or excusable neglect; newly discovered evidence; fraud; the judgment is

18  void; the judgment has been satisfied; or any other reason that justifies relief.  Uberti showed

19  nothing going to any of those grounds.

20      If it was not clear before, let us be clear now:  the Sonoma County Board of Supervisors

21  did not and does not violate the Sherman Act, 15 U.S.C. §§ 1–38, by consolidating the duties

22  of the Auditor-Controller with the Treasurer-Tax Collector into one person.  The law is clear:

> The operation of government is neither a commercial activity nor a
> competitive one.  Government operations may only be carried out
> by the government, and no rival, would-be government may
> compete for the opportunity to perform the governmental function.
> Governing is by its very nature a non-competitive act.  Thus,
> **monopolistic practices with respect to the conduct of**
> **government do not violate the Sherman Act.**

*Sheppard v. Lee*, 929 F.2d 496, 499 (9th Cir. 1991) (emphasis added) (footnote omitted).

3

United States District Court
Northern District of California

Since our February 2020 order explaining it to him, Uberti has known that the Sherman Act does not offer him relief in this case. Nonetheless, he continues to argue that the consolidated ACTTC is a "monopoly" or "combination" restraining the "market" in violation of the Sherman Act. The "market" here, he asserts, is the "market" of welfare benefits in Sonoma County. In this latest complaint, he adds: "Local governments are not immune from liability for violation of 15 USC sections 1 and 2 unless there is a clear articulation of state policy authorizing the anticompetitive conduct (See: *Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 370 (1991)." (Dkt. No. 9 at 10).

That is more or less a correct statement of the Supreme Court's holding in *Omni Outdoor Advertising*. Specifically, the Supreme court held, in part, that local governments are immune from the Sherman Act where (1) state law authorizes the challenged action by the local government and (2) there is a "clear articulation of a state policy to authorize anticompetitive conduct," which is satisfied "if suppression of competition is the 'foreseeable result' of what the statute authorizes." *Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. at 370–73.

Here, as noted, California law specifically authorized the consolidation of the Sonoma County Auditor-Controller with the Treasurer-Tax Collector.

But the test established by *Omni Outdoor Advertising* does not apply here at all.

> "The Sherman Act prohibits certain conduct affecting 'trade or commerce.' Consistent with the statutory purpose of promoting commercial competition, an activity must in some way involve such competition in order to constitute 'trade or commerce.' Thus, the proscriptions of the Act are tailored for the business world."

*Sheppard v. Lee*, 929 F.2d at 499 (cleaned up). The harm to "trade or commerce" Uberti has identified is the denial of his applications for public benefits. Public benefits are not trade or commerce.

Although the March order did not explain that public benefits are not trade or commerce, Uberti cannot modify his theory through yet another filing to attempt to address that point. Uberti's gripe about the County's creation of the consolidated ACTTC has persisted throughout. If there were any facts showing an effect on any actual market, trade, or

commerce, resulting from the County's consolidation of the Auditor-Controller with the Treasurer-Tax Collector some 14 years ago, Uberti could have alleged them by now.

In addition to repeatedly asserting patently incorrect legal theories, Uberti is just wrong on the facts. Uberti asserts that the consolidation of the County Auditor-Controller with the Treasurer-Tax Collector violated the Generally Accepted Government Auditing Standards, 2 C.F.R. §§ 200.501–200.521, and 7 C.F.R. § 274.8(b)(3). The last section requires states to maintain systems for adequate security and documentation for EBT cards. Uberti further asserts that the ACTTC's improper auditing practices with respect to federal welfare funds caused his benefits to be improperly terminated and his applications denied.

Aside from the last provision, 7 C.F.R. § 274.8(b)(3), addressed below, Uberti offers no explanation how the ACTTC violated the auditing standards. Moreover, the "evidence" he attached to his complaint showed that the County properly administered its federal welfare funds. Uberti attached to his complaint a report from an independent auditing firm (Dkt. No. 9-3 at 68–87). The report stated, in part (*id.* at 68, 70):

> We have audited, in accordance with the auditing standards generally accepted in the United States of America and the standards applicable to financial audits contained in *Government Auditing Standards* issued by the Comptroller General of the United States, the financial statements of the governmental activities, the business-type activities, the aggregate discretely presented component units, each major fund, and the aggregate remaining fund information of the county of Sonoma, California (County), as of and for the year ended June 30, 2017, and the related notes to the financial statements, which collectively comprise the County's basic financial statements, and have issued our report thereon dated December 22, 2017.

> *          *          *

> We have audited the [County's] compliance with the types of compliance requirements described in the *OMB Compliance Supplement* that could have a direct and material effect on each of the County's major federal programs for the year ended June 30, 2017.

> *          *          *

> In our opinion, the County complied, in all material respects, with the types of compliance requirements referred to above that could have a direct and material effect on each of its major federal programs for the year ended June 30, 2017.

Uberti underlined statements in the report to the effect that the independent auditors did not audit the County's "internal controls" and did not express an opinion on the County's internal compliance with the Generally Accepted Government Auditing Standards and 2 C.F.R. §§ 200.501–200.521.  This is not evidence that the ACTTC was not complying with those standards.  And again, even if the ACTTC did not comply with the auditing standards, according to the report, it did not affect Uberti because the County properly administered its major federal programs, including its welfare programs.

The report also stated (Dkt. No. 9-3 at 71):

> The results of our auditing procedures disclosed an instance of noncompliance which is required to be reported in accordance with the Uniform Guidance and which is described in the accompanying schedule of findings and question costs as item 2017-001.  Our opinion on each major federal program is not modified with respect to this matter.

The "instance of noncompliance" was the County's failure to maintain an EBT system in conformance with 7 C.F.R. § 274.8(b)(3) for the benefits it distributed pursuant to the Supplemental Nutritional Assistance Program (*id.* at 85).  In California, the Supplemental Nutritional Assistance Program is administered as "CalFRESH" and recipients can receive and use their CalFRESH money via an EBT card.

Uberti also attached to his complaint notices from the County dated from May 2018 through February 2020 regarding his CalFRESH benefits.  As relevant, the notices informed Uberti that his benefits were being terminated or his applications denied because he did not supply the required documentation, the documents he submitted were incomplete, or he failed to keep an appointment (Dkt. Nos. 9-2, 9-3 at 1–17).  Uberti does not dispute those reasons for denial.  Instead, he speculates that the ACTTC's failure to maintain a system to track and inventory EBT cards in conformance with 7 C.F.R. § 274.8(b)(3) somehow caused him to be improperly denied CalFRESH.  But in January 2018, the County corrected the problem by implementing "a system to track/inventory EBT card stock" to come into compliance with 7 C.F.R. § 274.8(b)(3) (Dkt. No. 9-3 at 90).  Moreover, the conclusion of the independent auditors and the reasons given in the CalFRESH notices refute Uberti's speculation.

1    Uberti also failed to properly serve the instant complaint.

2    For the foregoing reasons, the case is **DISMISSED WITH PREJUDICE**.

3    An accompanying order shall enter final judgment in favor of defendants against

4  plaintiff.

5    Furthermore, plaintiff George Uberti is **ORDERED TO SHOW CAUSE** why he should not

6  be deemed a vexatious litigant subject to a prefiling order.

10    **IT IS SO ORDERED.**

12  Dated:  April 23, 2021

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE